## INHABITANTS OF CITY OF PLAINFIELD
### v. PALMER et al.
### No. 5412.

Circuit Court of Appeals, Third Circuit.
July 6, 1934.

Wm. Newcorn, of Plainfield, N. J., for appellant.

Anthony F. Augelli, John Milton, and McDermott, Enright & Carpenter, all of Jersey City, N. J., for appellees.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

The Angelo Paino Construction Corporation, hereinafter called the contractor (later superseded by its trustee in bankruptcy), brought this suit against the municipality of Plainfield, New Jersey, for the balance due on a contract for the construction of a reenforced concrete monolithic sewer. It was to be made in certain dimensions and be composed of concrete of different grades for different places in the structure; Class A to show a minimum twenty-eight day compressive strength of 3,000 pounds to the square inch and Class B a like compressive strength of 2,500 pounds to the square inch.

The parties agreed in the contract that a certain composition of cement, sand and gravel, constituting the aggregates of the concrete of both classes, would produce the required strength and, to ensure performance, they further agreed that the strength of the concrete should be determined by testing cylinders of certain dimensions which should be molded from concrete actually produced on the job after it had been deposited from the mixer. The only aggregate with which we are concerned is that of cement, which it was agreed should be six bags to the batch.

Before the work was fully completed the city was informed through an anonymous let-

ter that the contractor was putting in less than six bags of cement. This resulted in trouble, whereupon the city refused payment of moneys which otherwise would be due the contractor. This suit followed.

The city then made borings in each 90 foot sub-division of the sewer (the contractor consenting) and procured 45 cores which on examination ran in compressive strength from 1,817 pounds to 4,659 pounds per square inch. On this showing the city interposed a counterclaim against the contractor for an amount of money sufficient to pay for tearing out bad parts of the work and replacing them with concrete of the contract strength. At the trial the contractor made a prima facie case of performance. The city contested performance and pressed its counterclaim. The court, recognizing from the evidence that the city, though denying formal acceptance of the sewer, nevertheless holds it and retains its benefits, submitted the case not on the theory of strict performance of the contract but on the theory of substantial performance on an instruction to the jury that if they should find substantial performance, even though there be failure in some minor particulars, the contractor might recover the contract price less an allowance to the city to make good the defects, and that if they should find the contractor had not substantially performed its contract, the city, though still holding the sewer, could recover on its counterclaim.

The city had moved for a directed verdict in its favor on the contractor's demand and on its own counterclaim upon the ground that there was no question of substantial performance for the jury to decide but that, on the other hand, the court should decide as matter of law that the rule of strict compliance governs and should itself find from the evidence that the contractor had failed in that regard. The court refused these motions. The contractor had a verdict and from the judgment that followed the city appealed, assigning the court's refusal of its motions for a directed verdict as its principal ground of error.

The main questions on appeal are whether the rule of strict performance or of substantial performance governs this case and, if the latter, whether there is evidence to sustain the verdict.

One other assignment of error arose out of the fact that the contractor brought his suit without obtaining an estimate for work done and the amount due thereon from the city's engineer, and another from the city's contention that it has never accepted the sewer.

Speaking of the last two questions first, the contract provided that, before payment, such an estimate should be made by the engineer. In this case payment was refused before any demand for an estimate had been made, or could, within reason, be made, upon the engineer. The city's refusal to pay any balance that might be due, which was the initial step in the trouble, made demand by the contractor futile. Moreover, there was no provision in the contract that such an estimate by the engineer was a prerequisite to recovery. Walsh Construction Company v. Cleveland (D. C.) 271 F. 701, 711; Id. (C. C. A.) 279 F. 57.

Though the city denies formal acceptance of the sewer it was proved as a matter of fact that it has the sewer and is using it for the purposes for which it was constructed. This, aside from the applicable rule of performance, relegates the whole controversy to a question of damages, that is, damages demanded by the contractor of the city and damages demanded by the city of the contractor, all of which was submitted to the jury in a charge which was singularly simple and clear.

As to the law of strict or substantial performance of contracts such as the one in suit it "is well settled that substantial performance * * * by one party coupled with retention of the benefits thereof by the other will authorize an action by the former to recover the contract compensation; that in such case recovery may be had upon an averment of full performance though the proof falls short of showing it; and that the remedy of the latter is by counterclaim for his damages or by an independent action before he is sued. City of St. Charles v. Stookey (C. C. A.) 154 F. 772." Omaha Water Co. v. Omaha (C. C. A.) 156 F. 922, 926; Walsh Construction Co. v. Cleveland (D. C.) 271 F. 701; Id. (C. C. A.) 279 F. 57; Donnelly "The Law of Public Practice" (1922) § 281, p. 395, and cases cited.

It follows that the learned trial judge in his instruction to the jury applied the appropriate rule of substantial performance and that he committed no error in submitting the case on that rule (Loh v. Broadway Realty Co., 77 N. J. Law 112, 71 A. 112; 9 C. J. p. 748, § 83) unless, as the city contends in the alternative, the evidence was not sufficient to sustain a verdict rendered even on that instruction. From an examination of the very heavy record it appears that, to

show performance in supplying concrete of the contract strength, the contractor relied upon the "test cylinders" as provided in the contract. Of these 440 were made from the concrete batches and showed, on test by an approved laboratory, an average compressive strength of 3,200 pounds per square inch for Class A concrete and 2,900 pounds for Class B concrete. The city relied upon evidence, equally positive, that the cores taken from the finished work showed compressive strength in many cases below the contract strength of 3,000 and 2,500 pounds for the two grades of concrete. It relied also upon testimony that the contractor frequently and surreptitiously put less than six bags of cement in the batches. The contractor replied in rebuttal that the test by cores, taken from every 90 foot sub-division of the sewer, was not a fair test in that it did not show the quality of the concrete in the whole area and particularly it was not a test of the kind upon which the parties had agreed in their contract. And, finally, it introduced evidence that it did not at any time (except when preparing concrete to be put in a place which required less than a full batch) use less than six bags of the cement aggregate. In addition to these opposing lines there was much testimony attacking the ability and credibility of the opposing witnesses. In consequence, the testimony became conflicting to a degree rarely seen even in suits on building contracts. Only a jury, by analyzing, reconciling, rejecting and accepting testimony, could find the truth. As there was enough evidence to sustain a verdict of substantial performance on the part of the contractor, the learned trial judge committed no error in refusing the city's motion for a directed verdict, and none in submitting the case on the contractor's claim. The same line of thought applies to and governs the question whether the court erred in refusing the city a directed verdict on its counterclaim.

The city assigns error for the allowance of interest on the amount which the jury found the city owed the contractor. Counsel for both parties agreed at the trial that "the balance due under the contract is $40,-271.63." That, in effect, was a stipulation that the verdict, if for the contractor, should be for that sum less any sum found due the city on its counterclaim, and the court, accepting these figures, charged the jury that on a finding of substantial performance by the contractor it could render a verdict for that amount, less any allowance on the counterclaim, "with interest from June 26, 1931,"

which was the date of the completion of the work. With this instruction, to which no exception was noted, the jury went away and on it based their verdict for the stipulated sum less $647 on the city's counterclaim, with interest from the named date. Later, after the jury had been discharged and when the court was molding the judgment, there was dispute between counsel as to whether the stipulation of the "balance due under the contract" included or excluded interest. However, the court included interest (over an exception then made by the defendant) and entered judgment for the contractor in the sum of $45,379.29, and costs.

We can see no reason why interest should not be allowed, even had it been contested, because the jury having found that the work had been substantially performed and completed on June 26, 1931, the city refused payment and kept, during all that time, the money which belonged to the contractor. In any event, the city did not note an exception to the court's instruction in its charge and, if wrong, it did not give the court an opportunity to correct its error. We hold that the assignment as to the allowance of interest should not prevail.

Finding the remaining assignments of error insubstantial, the judgment below is affirmed.